b

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **MANUEL SILVER, ET AL.,**<br>**Plaintiffs** | **CIVIL DOCKET NO. 1:22-CV-00138** |
| **VERSUS** | **DISTRICT JUDGE DOUGHTY** |
| **FOREST RIVER, INC., ET AL.,**<br>**Defendants** | **MAGISTRATE JUDGE PEREZ-MONTES** |

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss for Lack of Jurisdiction and Improper Venue filed by Defendant Forest River, Inc. ("Forest River"). ECF No. 9.

Because this Court has specific personal jurisdiction over Forest River, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 9) should be denied.

Because venue is proper in this Court, Defendants' Motion to Dismiss or Transfer for Improper Venue (ECF No. 9) should be DENIED.

## I.    Background

Manuel and Tama Silver ("the Silvers") filed a Complaint against Forest River and Ford Motor Co. ("Ford"). The Silvers purchased a recreational motor home ("RV") that was manufactured by Forest River (the motor home component parts) and Ford (the chassis), and assembled by Forest River. ECF No. 1. The Silvers contend the RV is defective.

The Silvers allege breach of the implied warranties of merchantability and fitness for use as an RV, and breach of the implied warranty that the repair work

undertaken by Defendants had been performed in a good and workman-like manner. ECF No. 1.  The Silvers also allege violations of the Louisiana redhibition laws and violation of the Texas Deceptive Trade Practices Act ("TDTPA").  They seek rescission of the sale, damages (including "multiple damages" under the TDTPA), attorney fees, and costs.  ECF No. 1.  The Silvers also request a jury trial.

Ford answered the Complaint.  ECF No. 7.  Forest River then filed a Motion to Dismiss for Lack of Jurisdiction and Improper Venue.  ECF Nos. 9, 33.  Forest River contends it lacks sufficient minimum contacts with Louisiana to subject it to personal jurisdiction in Louisiana.  Alternatively, Forest River contends  that under 28 U.S.C. § 1391(b) and § 1406, the case should be dismissed for improper venue or, alternatively, transferred to the United States District Court for the Northern District of Texas.  Plaintiffs oppose that motion.  ECF Nos. 17, 34.

II.    **Forest River's Motion to Dismiss should be denied.**

    A.    **The Court has specific personal jurisdiction over Forest River.**

        1.    **The standards for a motion to dismiss for lack of personal jurisdiction.**

"Federal Rule of Civil Procedure 12(b)(2) permits a party to move to dismiss a civil complaint for lack of personal jurisdiction.  'Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists.'"  *Graham v. Winnebago Industries, Inc.*, 2020 WL 13252050, at *1 (W.D. La. 2020) (*quoting Luv N' Care, Ltd. v. Insta-Mix,*

*Inc.*, 438 F.3d 465, 469 (5th Cir. 2006), cert. den., 548 U.S. 904 (2006)).  "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction."  *Graham*, 2020 WL 13252050, at *1 (*quoting Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. CCR Fire Protection, L.L.C.*, 2018 WL 3076743, at *4 (M.D. La. 2018); *see also Bulkley & Associates, L.L.C. v. Department of Industrial Relations, Division of Occupational Safety & Health of the State of California*, 1 F.4th 346, 350 (5th Cir. 2021).

On a motion to dismiss for lack of jurisdiction, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists."  *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990); *Graham*, 2020 WL 13252050, at *2; *see also Bulkley & Associates, L.L.C.*, 1 F.4th at 351.  Courts may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)); *Graham*, 2020 WL 13252050, at *2.

## 2.   <u>The law as to personal jurisdiction</u>

"Personal jurisdiction in federal court is governed by the law of the state in which the federal court sits."  *Bulkley & Associates, L.L.C.*, 1 F.4th at 350 n. 16 (*citing*

*Walden v. Fiore*, 571 U.S. 277, 283 (2014); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); Fed. R. Civ. P. 4(k)(1)(A).  "However, "[t]The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Company v. Montana Eighth Judicial District Court,* 141 S. Ct. 1017, 1024 (U.S. 2021).  "[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. State of Washington, Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945) (*citing Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

The Supreme Court's focus on the nature and extent of the defendant's relationship to the forum state led the Court to recognize two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction.  *See Ford Motor Company*, 141 S. Ct. at 1024; *see also Alexander v. Anheuser-Busch, L.L.C.*, 2021 WL 3439131, at *1 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 716 (U.S. 2021).  General jurisdiction arises when the defendant has "continuous and systematic" contacts with the forum and "allows for jurisdiction over all claims against the defendant, no matter their connection to the forum."  *See Alexander*, 2021 WL 3439131, at *1 (*citing In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Product Liability Litigation*, 888 F.3d 753,

4

778 (5th Cir. 2018)). "A court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Ford Motor Company*, 141 S. Ct. at 1024.

Specific jurisdiction, on the other hand, "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *See Alexander*, 2021 WL 3439131, at *1 (*citing Ford Motor Co.*, 141 S. Ct. at 1024). To be subject to specific jurisdiction, the defendant must have acted to "purposefully avail itself of the privilege of conducting activities within the forum State" and "there must be an affiliation between the forum and the underlying controversy." *See Alexander*, 2021 WL 3439131, at *1 (*citing Ford Motor Co.*, 141 S. Ct. at 1024–25). The defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *See Ford Motor Co.*, 141 S. Ct. at 1024-25 (*citing Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." *See Ford Motor Co.*, 141 S. Ct. at 1024-25 (*citing Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984)).

"The Louisiana long-arm statute confers jurisdiction to the limits of due process." *Advanta-Star Automotive Research Corporation of America v. Search Optics, L.L.C.*, 2021 WL 4989797, at *3 (E.D. La. 2021) (*citing* La. R.S. 13:3201). "Thus, because Louisiana's long-arm statute confers jurisdiction to the limits of due process, a federal court must determine only whether subjecting the defendant to suit in Louisiana comports with the Due Process Clause." *Advanta-Star Automotive*

*Research Corporation of America*, 2021 WL 4989797, at *3 (*citing Dickson Marine Incorporated v. Panalpina, Inc.,* 179 F.3d 331, 336 (5th Cir. 1999)).

The Due Process inquiry implemented by the United States Fifth Circuit Court of Appeals involves three questions.  "First, to evaluate minimum contacts, we ask if the defendant 'purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there.'  Second, we ask if the case 'arises out of or results from the defendant's forum-related contacts.'  Third, we ask if 'the exercise of personal jurisdiction is fair and reasonable.'  If we answer all three questions in the affirmative, personal jurisdiction over the out-of-state defendant satisfies due process." *Bulkley & Associates, L.L.C.*, 1 F.4th at 351 (*citing Stroman Realty, Inc. v. Wercinski,* 513 F.3d 476, 484 (5th Cir. 2008), *cert. den.*, 555 U.S. 816 (2008); *Defense Distributed v. Grewal,* 971 F.3d 485, 490 (5th Cir. 2020), *cert. den.,* 141 S. Ct. 1736 (U.S. 2021); *Ford Motor Company,* 141 S. Ct. at 1024); *see also Oliver v. Roehm America, L.L.C.,* 2022 WL 11763100, at *12 (E.D. La. 2022); *Alexander*, 2021 WL 3439131, at *1 (*citing Carmona v. Leo Ship Management, Inc.*, 924 F.3d 190, 193 (5th Cir. 2019)).

3.  <u>Forest River has minimum contacts with Louisiana which relate to Plaintiffs' injuries and support this Court's assertion of personal jurisdiction.</u>

Forest River contends it does not have sufficient minimum contacts with Louisiana to support the Court's exercise of either specific or general personal jurisdiction, citing *Graham*, 2020 WL 13252050, at *1. ECF No. 9-3 at 7.

6

Alternatively, Forest River argues the cases should be dismissed for improper venue. ECF No. 9-3 at 14.

The Silvers argue that specific jurisdiction applies in this case. ECF No. 33 at 5. The invoking party must show that the defendant deliberately "reached out beyond" its home—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014). There must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *See Ford Motor Co.*, 141 S. Ct. at 1024-25 (*citing Bristol-Myers Squibb Co. v. Superior Court of California,* 137 S. Ct. 1773, 1780 (U.S. 2017)).

In *Ford Motor Co.*, the Supreme Court expressly rejected a causation-only approach to the connection between a plaintiff's suit and a defendant's activities in the forum state. The Supreme Court stated that "specific jurisdiction attaches when a company like Ford serves a market for a product in the forum State and the product malfunctions there." *See Ford Motor Co.*, 141 S. Ct. at 1027 (*citing World-Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 295 & 297 (1980) ("[I]f the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or all] other

States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.")).

In *Ford Motor Company,* the vehicles that were the subject of two suits were designed, manufactured, and originally sold outside of the forum states.  *See Ford Motor Co.*, 141 S. Ct. at 1023.  Later resales and relocations by consumers brought the vehicles to the forum states.  *See Ford Motor Co.*, 141 S. Ct. at 1023.  The United States Supreme Court held that, where Ford had advertised, sold, and serviced the subject model cars in the forum states, it had systematically served a market in those states for the models of vehicles that the plaintiffs alleged had malfunctioned and injured them in those States.  Thus, there was a strong relationship among the defendant, the forum, and the litigation–the "essential foundation" of specific jurisdiction. [1]  *See Ford Motor Co.*, 141 S. Ct. at 1028.

The Supreme Court further explained that specific jurisdiction does not always require "proof of causation, *i.e.* proof that the plaintiff's claim came about because of the defendant's in-state conduct."  *See Ford Motor Co.,* 141 S. Ct. at 1026.  Pursuant to *Ford,* a plaintiff must show forum-related contacts, and that his claims arise out of

---

[1] *Contrast LNS Enterprises L.L.C. v. Continental Motors, Inc.*, 22 F.4th 852, 861 (9th Cir. 2022) (the court found insufficient contact between the forum state (Arizona) and defendant, which did not manufacture, design, or service the plaintiff's aircraft in Arizona, nor was the litigation related to that contact since the defendant did not service Plaintiff's aircraft in Arizona and the service center service did not even service plaintiff's type of aircraft); *see also Wallace v. Yamaha Motors Corp., U.S.A.,* 2022 WL 61430, at *4 (4th Cir. 2022) (finding no specific personal jurisdiction over the defendant where an allegedly defective motorcycle: was designed, manufactured, distributed, and sold elsewhere than the forum state; and the injuries did not occur in the forum state).

*or* result from these forum-related contacts. *See Alexander*, 2021 WL 3439131, at \*3 (*citing Carmona*, 924 F.3d at 193). While a plaintiff need not show that these contacts caused his injury, he must at least show that they are related to it. *See Alexander*, 2021 WL 3439131, at \*3 (*citing Ford Motor Co.*, 141 S. Ct. at 1026); *see also Tutus, L.L.C. v. JLG Indus., Inc.,* 2022 WL 1517044, at \*2 n. 1 (5th Cir. 2022) (declining to apply a strict causation standard after the Supreme Court, in *Ford*, 141 S. Ct. at 1026, rejected that standard).

Plaintiffs argue that, as in *Ford Motor Co.*, Forest River has purposely availed itself of the RV market in Louisiana by having authorized at least eight authorized Forest River dealers and three authorized repair shops in Louisiana, as well as advertising its products in Louisiana. Plaintiffs contend that Forest River: directed Plaintiffs to take their RV to one of the authorized Louisiana repair shops; took possession of the RV from that repair shop; and later delivered the RV to Plaintiffs in Louisiana.

Plaintiffs also submitted the corporate deposition of Dan Evans, the general manager of parts, service and warranty at Forest River in Elkhart, Indiana. ECF No. 33-1 at 7. Evans testified in his deposition that all Forest River dealers in Louisiana are independently owned and operated, and are not controlled by Forest River. ECF No. 33-1 at 13. Evans testified that, if a dealer has a warranty issue with a Forest River product, the Forest River warranty department assists them with a warranty claim. ECF No. 33-1 at 13.

Evans also testified that Forest River has four customer service representatives that have territories across the United States. ECF No. 33-1 at 22. Jeff Hood has the southeastern United States including Louisiana. ECF No. 33-1 at 22. Patricia Zilm is the warranty manager for Forest River's Class E motor home customer service. ECF No. 33-1 at 22. Jeff Hood had notes of his calls with the Plaintiffs and the dealer regarding repairs to Plaintiffs' RV. ECF No. 33-1 at 22-24. Jeff Hood and Patricia Zilm also corresponded by emails about Plaintiffs' RV repairs. ECF No. 33-1 at 25-26.

Evans testified that Forest River provides warranty registration forms to retailers when they purchase RVs for resale. ECF No. 33-1 at 31-32. The form provided to retailers in Louisiana is different because it includes language concerning redhibition. ECF No. 33-1 at 32. Evans testified there is also an electronic warrant claim form that is the same for all dealerships. ECF No. 33-1 at 33. That form is used to reimburse dealers for warranted repair costs. ECF No. 33-1 at 34.

Evans explained that Plaintiffs were instructed to take their RV to Berryland Campers in Pontchatoula, Louisiana for warranty repairs. ECF No. 33-1 at 36. Berryland Campers listed Plaintiffs' motor home's issues for the Forest River Factory. ECF No. 33-1 at 42. After 37 days at Berryland Campers, Forest River had Plaintiffs' RV transported to Forest River in Indiana. ECF No. 33-1 at 37. Berryland Campers was not reimbursed for the Plaintiffs' RV by Forest River because it did not make any repairs to the RV. ECF No. 33-1 at 35. Instead, Forest River arranged and paid to

have Plaintiffs' RV transported by Synergy RV Transport from Berryland Campers to the Forest River Service Center in Indiana. ECF No. 33-1 at 37-38, 43. After the factory repairs were completed, Forest River then arranged to have Plaintiffs' RV transported back to the Plaintiffs, from Elkhart, Indiana to Pineville, Louisiana, by Mapletree Transportation. ECF No. 33-1 at 40.

Evans explained that Forest River's website offers dealers access to tutorials on how to submit warranty claims, but does not offer tutorials for repairs. ECD No. 33-1 at 48. However, if a dealer calls Forest River and asks how to make a repair, Forest River explains the repair. ECF No. 33-1 at 48.

Evans testified that he was not aware of any advertising by Forest River of Plaintiffs' RV model in Louisiana. ECF No. 33-1 at 50. Plaintiffs' RV was sold by Forest River to a dealership, RV Retailers d/b/a Motor Home Specialists, in Alvarado, Texas. ECF No. 33-1 at 51. Evans stated that Forest River did not perform any service on Plaintiffs' RV in Louisiana. ECF No. 33-1 at 51.

Plaintiffs argue that not only did Forest River direct business activities at Louisiana, but that Forest River's unsuccessful repair attempts to their RV in Louisiana gave rise to Plaintiffs' rehibition claims. Forest River directed Plaintiffs to take their RV to Forest River's authorized service facility, Berryland Campers in Pontchatoula, to diagnose the issues with it. After Berryland Campers sent pictures of Plaintiffs' RV to Forest River, Forest River sent a transport company to Louisiana to pick up the RV and transport it to Forest River in Indiana for repair. After it was

11

repaired, Forest River sent the RV back to the Plaintiffs in Louisiana. Plaintiffs continued to have issues, however, with the Ford chassis which had been installed in the RV living area by Forest River. Plaintiffs had the Ford chassis repaired three times by a dealer (Courtesy Ford) in Breaux Bridge, Louisiana. Plaintiffs also contend that Forest River benefitted from Ford Motor Company's express warranty of their chassis components and Ford's provision of access to dealers in Louisiana. Thus, Plaintiffs contend Forest River purposely availed itself of the privilege of conducting business in Louisiana that specifically affected the Plaintiffs by: using the Forest River authorized repair facility in Pontchatoula, Louisiana; directing Plaintiffs to take their RV to the dealer in Pontchatoula; directing Berryland Campers in Pontchatoula to perform services for Forest River in Louisiana; Berryland Motor's attempt to obtain a repair authorization from Forest River; Forest River's eventual take-over of the repairs; and Forest River's transport of the RV from Louisiana to Indiana for repairs, and returning it to Louisiana. ECF No. 33 at 6.

Forest River, however, contends that Plaintiffs purchased their RV in Texas, from a dealer that had purchased the RV from Forest River, and that Forest River does not maintain a physical plant or employees in Louisiana. Evans states in an affidavit that Forest River is an Indiana corporation with its principal place of business in Indiana, and is an end-state manufacturer of recreational vehicles. ECF No. 9-1. Evans further states that Forest River does not have property, buildings, bank accounts, employees, offices, or business operations in Louisiana, but is

registered to conduct business in Louisiana and has an appointed agent for service of process there.  ECF No. 9-1.  Evans also states that Forest River did not directly sell the RV to the Silvers but instead sold it to Motor Home Specialist, a dealer in Alvarado, Texas that sells Forest River products.  ECF No. 9-1.  Evans states that Forest River delivered the RV to Motor Home Specialist in Texas, and not to the plaintiffs in Louisiana.  ECF No. 9-1.

Forest River relies on *Graham*, 2020 WL 13252050, a similar case in which the district court found no personal jurisdiction over either out-of-state defendant.[2] However, *Graham* was decided before the Supreme Court issued its decision in *Ford*.

---

[2] In *Graham,* the Louisiana plaintiffs purchased a Winnebago RV from Southaven R.V. Center in Mississippi; the Winnebago was manufactured by defendant Winnebago in Iowa; the sales contract was signed by Plaintiffs in Mississippi; after the purchase, the plaintiffs had numerous problems with their RV.  *See Graham*, 2020 WL 13252050, at *2.  Plaintiffs contended that Southaven R.V. Center: sent a salesman to plaintiffs' home  in Louisiana to pick up the RV; directed them to repair shops in Louisiana; advertised on its website that it had "5 Star national Service" and was a member of the "Nationwide Service Priority RV Network"; advertised on its website that it has one of the largest selections of inventory in the nation; derived revenue from goods used or consumed in Louisiana; and knew at the time of sale that the RV would be used and garaged primarily in Louisiana.  *See Graham*, 2020 WL 13252050, at *5.  The district court found that: communications between Southaven R.V. and plaintiffs were initiated by plaintiffs; plaintiffs did not demonstrate that their claims arose out of or were related to Southaven R.V. Center's advertisements; and Southaven's revenue from a motor home used in Louisiana was a result of plaintiffs' unilateral decision to drive the motor home to Louisiana; the RV was no longer in the stream of commerce after plaintiffs' purchased it; and the manifestation of defects in Louisiana is not an activity that can be attributed to the defendants.  *See Graham*, 2020 WL 13252050, at *6.  The court concluded that Southaven R.V. Center did not have minimum contacts with Louisiana and the court did not have personal jurisdiction because Southaven: did not have a physical presence in Louisiana; did not conduct business Louisiana; and the contract underlying the business transaction at issue in the lawsuit was not signed in Louisiana and did not call for performance in Louisiana.  *See Graham*, 2020 WL 13252050, at *6 (*citing Monkton Insurance Services, Ltd. V. Ritter,* 768 F.3d 429, 433 (5th Cir. 2014)).

In *Graham*, 2020 WL 13252050 at *4-*6, the court applied a strict causation approach and found the plaintiffs failed to show "litigation result[ing] from injuries that arise out of [defendants' in-state] activities." That approach was rejected by the Supreme Court in *Ford.*

Plaintiffs have demonstrated Forest River's that forum-related contacts by showing that Forest River has dealers and authorized repair centers in Louisiana, clearly in anticipation of its products being purchased and used in Louisiana. Plaintiffs-Louisiana residents-purchased a Forest River RV and garaged it in Louisiana. The RV malfunctioned in Louisiana, and Forest River directed Plaintiffs to an authorized repair center in Louisiana, which began the repair process and documented the repairs required for Forest River. Plaintiffs have also shown that their claims result from these forum-related contacts. Plaintiffs purchased a Forest River product which they could maintain and repair in Louisiana. Forest River's failure to repair Plaintiffs' RV gave rise to Plaintiffs' rehibition claim. Because Plaintiffs' injuries are related to Forest River's activities in Louisiana, it is not unreasonable to subject Forest River to suit in a Louisiana court. *Compare Ford Motor Co.,* 141 S. Ct. at 1027 ("[S]pecific jurisdiction attaches when a company like Ford serves a market for a product in the forum State and the product malfunctions there."); *Cohen v. Norcold, Inc.,* 2021 WL 4037831, at *3–4 (E.D.N.C. 2021) (*citing Ford Motor Co.*, 141 S. Ct. at 1026) (the North Carolina court found it had specific personal jurisdiction over defendant Holiday Kamper which was organized under the

laws of the State of Minnesota and had a principal place of business in Illinois, operated a chain of RV dealerships and service centers in North and South Carolina, the camper was used within North Carolina, Holiday Kamper performed a repair on plaintiff's camper in South Carolina for a defect that caused injury within North Carolina; North Carolina was plaintiffs' home; and the injuries sustained by plaintiffs arise out of or relate to the activities of Holiday Kamper in North Carolina). *Contrast Brantley v. Tiffin Motor Homes, Inc.,* 2022 WL 444474, at *3–4 (N.D. Ga. 2022) (the court found the fact that the plaintiff drove the Tiffin-manufactured vehicle to Georgia, did not, without more, amount to a contact sufficient to comport with due process and establish personal jurisdiction over defendant, because there were no allegations that Tiffin designed its product for the Georgia market, advertised in Georgia, established channels for providing regular service to Georgia customers, marketed its product through a distributor in Georgia, or conducted similar activities.).

Finally, it is fair and reasonable to subject Forest River to suit in Louisiana. Forest River directs its activities at Louisiana by selling its RVs to Louisiana authorized dealers and by providing authorized service centers in Louisiana. Thus, Forest River's purposeful availment of the Louisiana market, enjoying the "benefits and protection of [Louisiana's] laws" for the enforcement of contracts and the formation of effective markets, creates reciprocal obligations, such as that the Forest River RVs marketed in Louisiana be safe for Louisiana citizens to use in Louisiana.

15

*Compare Ford Motor Co.,* 141 S. Ct. at 1029-30.  Moreover, because Forest River has regularly sold its products to Louisiana dealers, it had clear notice that it would be subject to jurisdiction in Louisiana courts if its products malfunction there.  *Compare Ford Motor Co.,* 141 S. Ct. at 1030 (*citing World-Wide Volkswagen,* 444 U.S. at 297.

Because this Court has specific personal jurisdiction over Forest River, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 9) should be denied.

### B.    <u>Venue is proper in the Western District of Louisiana.</u>

Forest River also moves to dismiss or transfer this case due to improper venue, citing 28 U.S.C. § 1406(a) and Fed. R. Civ. P. 12(b)(3). ECF No. 9.  Forest River contends venue is improper in the Western District of Louisiana, under 28 U.S.C. § 1391(b)(2), because the relevant inquiry focuses on the activities of the defendant, and there is no "direct connection" between Forest River and the State of Louisiana. Forest River contends venue is proper in the Northern District of Texas, where a "substantial portion" of the events related to Plaintiffs' claims took place.

If a defendant objects to venue, the burden is on the plaintiff to establish venue is proper in the judicial district where the case has been brought.  *See Strange v. Carnival Corp.,* 2019 WL 1281251, at *4 (W.D. La. 2019); *CAM Logistics, L.L.C. v. Pratt Industries, Inc.,* 2021 WL 4485890, at *15 (W.D. La. 2021), *report and recommendation adopted,* 2021 WL 4483853 (W.D. La. 2021).  In analyzing a Rule 12(b)(3) motion to dismiss, the court must accept all allegations in the complaint as

true and resolve all conflicts in favor of the plaintiff.  *See Strange*, 2019 WL 1281251 at *4 (*citing Braspetro Oil Services Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 615 (5th Cir. 2007)); *CAM Logistics, L.L.C.*, 2021 WL 4485890, at *15.  The court may consider evidence beyond the facts "alleged in the complaint and its proper attachments."  *Strange*, 2019 WL 1281251 at *4 (*citing Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)); *CAM Logistics, L.L.C.*, 2021 WL 4485890, at *15.

> § 1391(b).  Venue in general.—A civil action may be brought in–
>
> (1)  a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2)  a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;
>
> (3)  if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

"If venue is challenged, the court must determine whether the case falls within one of the three categories."  *Strange*, 2019 WL 1281251 at *4 (*citing Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 493 (5th Cir. 2018); *see also Atlantic Marine Construction Co. v. United States District Court*, 571 U.S. 49, 55 (2013); *CADS Construction, L.L.C. v. Matrix Service, Inc.,* 2021 WL 4762406, at *2 (W.D. La. Oct. 12, 2021), *aff'd*, 2021 WL 6327688 (W.D. La. 2021).  "If it does, venue is proper; if it

does not, venue is improper, and the case must be dismissed or transferred under section 1406(a)." *Id.*

Rule 12(b)(3) and § 1406(a) [3] authorize dismissal or transfer only when the venue is improper, and not when the venue is proper but another, preferable venue exists. *See Atlantic Marine Construction Co.*, 571 U.S. at 55-56; *see also Baylor University v. Baylor Youth Foundation, Inc.*, 2022 WL 17732432, at *2 (W.D. Tex. 2022), *report and recommendation adopted*, 2022 WL 18911511 (W.D. Tex. 2022); *CADS Construction, L.L.C.,* 2021 WL 4762406, at *2.

Because (1) the RV malfunctioned at the Plaintiffs' residence within the Western District of Louisiana, and (2) repairs took place within the Western District of Louisiana twice in 2020 and once in 2021, substantial activities took place within the Western district of Louisiana. Therefore, venue is proper in the Western District of Louisiana under § 1391(b)(2).[4] *Compare CAM Logistics, L.L.C., Inc.*, 2021 WL

---

[3] 28 U.S.C. § 1406(a): "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

[4] As discussed above, this Court has specific personal jurisdiction over Forest River due to its activities directed at the State of Louisiana. Therefore, venue would also be proper in the Western District of Louisiana under § 1391(b)(3).

The "substantial events" in Texas that Forest River refers to are the sale of the RV to Plaintiffs in Alvarado, Texas, and, according to the Complaint (ECF No. 1 at 6), four repair trips to Amarillo, Texas in 2020, and one repair trip to Alvarado, Texas in 2021. Both Amarillo and Alvarado are within the jurisdiction of the United States District Court for the Northern District of Texas. However, Forest River has not alleged or shown that the State of Texas has personal jurisdiction over it.

4485890, at *15; *Talbot's Pharmaceuticals Family Products, L.L.C. v. Skanda Group Industries, L.L.C.,* 2021 WL 1940203, at *12 (W.D. La. 2021), *report and recommendation adopted,* 2021 WL 1929354 (W.D. La. 2021).

Because venue is proper in the Western District of Louisiana under § 1391, Defendants' Motion to Dismiss or Transfer for Improper Venue, pursuant to § 1406, (ECF No. 9) should be denied.

## III.  Conclusion

Based on the foregoing, IT IS RECOMMENDED that Forest River's Motion to Dismiss for Lack of  Personal Jurisdiction (ECF No. 9) be DENIED.

IT IS ALSO RECOMMENDED that Forest River's Motion to Dismiss or Transfer for Improper Venue (ECF No. 9) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14)

days from the date of its service, or within the time frame authorized by Fed. R. Civ.

P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the

legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this

_____1st_____ day of May 2023.

Joseph H.L. Perez-Montes
United States Magistrate Judge